[Cite as *State v. Hunter*, 2021-Ohio-2020.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

GEVONTE D. HUNTER

    Appellant

C.A. No.    29790

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 11 11 3220(A)

DECISION AND JOURNAL ENTRY

Dated: June 16, 2021

SUTTON, Judge.

**{¶1}** Defendant-Appellant, Gevonte D. Hunter, appeals the judgment of the Summit County Court of Common Pleas regarding the denial of a motion for new trial. For the reasons that follow, this Court affirms the decision below.

I.

**Mr. Hunter's Charges and Conviction**

**{¶2}** In *State v. Hunter*, 9th Dist. Summit No. 26610, 2014-Ohio-910, ¶ 2-3, ("*Hunter I*") this Court summarized Mr. Hunter's charges and sentence as follows:

> On July 19, 2011, shortly after 5:00 p.m., Salim Suleiman was fatally shot outside of a business known as Kelley's Carryout in Akron, Ohio. The Summit County Grand Jury indicted Mr. Hunter and another man, Alan Lollis, on the following charges stemming from these incidents: one count of aggravated murder in violation of R.C. 2903.01(B), one count of murder in violation of R.C. 2903.02(B), and two counts of aggravated robbery in violation of R.C. 2911.01(A)(1) and (A)(3), with gun specifications attendant to all counts pursuant to R.C. 2941.145. Mr. Hunter pleaded not guilty to the charges, and the case proceeded to jury trial. The jury found Mr. Hunter guilty on all charges.

In a sentencing entry issued on July 31, 2012, the trial court merged all of the counts, and sentenced Mr. Hunter on the aggravated murder conviction and gun specification to a total term of incarceration of thirty-three years to life.

This Court, in *Hunter I*, overruled Mr. Hunter's assignments of error regarding sufficiency of the evidence, manifest weight of the evidence, jury instructions, and ineffective assistance of counsel, and affirmed Mr. Hunter's conviction and sentence.

## **Mr. Hunter's Theory of the Case**

**{¶3}**   The *Hunter I* Court, in its analysis, described Mr. Hunter's defense theory, which was presented to the jury, as follows:

> *The defense called Ms. Ellerbe and Ms. Washington as witnesses. Both witnesses testified that Mr. Hunter habitually loses items, including his cell phones.* On the date at issue, Ms. Ellerbe and Ms. Washington were at a funeral. Ms. Ellerbe affirmed that her son's phone number was the same as the number associated with the Nokia phone recovered from the scene. However, she maintained that he had lost that phone at some point. Ms. Washington acknowledged that Mr. Hunter probably sent her a text message around 1:00 p.m. on July 19, 2011, asking if she was still at the funeral. Ms. Washington maintained that while she was at the funeral, her car was at the home of the deceased, and she had the only set of keys with her. Ms. Washington estimated that she was at the funeral from approximately noon until 4:00 p.m. that day, and then she returned to the home of the deceased, where she stayed for about another hour. Therefore, Ms. Washington's own testimony established that she was finished with the funeral proceedings at approximately 5:00 p.m., just prior to when Mr. Hunter was alleged to have shot Mr. Suleiman. However, Ms. Washington maintained that she did not give Mr. Hunter a ride anywhere that day.
>
> * * *
>
> *Although Mr. Hunter maintains that he had lost his cell phone, the telephone records authenticated by Detective Sheffield provide a text message from Mr. Hunter's phone at 1:08 p.m. on this date sent to his grandmother, in which he asked if she was still at the funeral, and Ms. Washington affirmed that she likely received this text from Mr. Hunter. From this a jury could infer that, as of the date of the incident, Mr. Hunter had not lost his cell phone. A reasonable inference arises from the later text messages between Mr. Hunter and "Bezz," that they planned to violently rob Mr. Suleiman on the afternoon at issue.* Further, Mr. Hunter's aunt saw Mr. Hunter walk toward Kelley's approximately one minute before shots were fired. This circumstantial evidence indicates that Mr. Hunter, using a firearm, attempted a theft offense against Mr. Suleiman, resulting in Mr. Suleiman's shooting death. Although the evidence against Mr. Hunter is circumstantial,

"[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

*In regard to Ms. Boswell's testimony, Mr. Hunter points out that Ms. Boswell had admittedly been drinking heavily, and to such an extent that she did not believe she could positively identify Mr. Hunter as the individual that she saw walking on the cut. She further did not testify as to hearing any gunshots herself, although, when she spoke with police officers she indicated she heard five shots. Further, she testified that Mr. Hunter's grandmother dropped him off nearby, but Ms. Washington testified that she did not give Mr. Hunter a ride that day.* In regard to Ms. Thomas' testimony, Mr. Hunter maintains she was not credible because she was angry with Mr. Lollis when she was interviewed by police, she was convicted of multiple felonies for theft, and she was smoking marijuana with Mr. Lollis when the conversation to which she testified took place.

Although we recognize the potential credibility issues to which Mr. Hunter cites, through cross-examination, the jury was aware of these issues. * * *

(Emphasis added.) *Id.* at ¶ 24-28.

## Motion for Leave

{¶1}   Approximately six years after this Court affirmed Mr. Hunter's conviction, Mr. Hunter moved the trial court for leave to file a motion for new trial.   In so doing, Mr. Hunter claimed he had newly discovered evidence in the form of a sworn affidavit from Deaysheona Jackson.  Mr. Hunter averred, in his own affidavit, he "did not know the identity of [Ms. Jackson] nor how to contact her on his own and spent years diligently attempting to find it out."  Mr. Hunter further averred only to know Ms. Jackson as "Desha," which is not her actual name.  Ultimately, Mr. Hunter indicated he found Ms. Jackson on Facebook through another friend, Dapree Beasley.

{¶2}    In her affidavit, Ms. Jackson averred she was with Mr. Hunter, her best friend, Jade Johnson, and Taveal Boswell on July 19, 2011, the date of the shooting, at Ms. Johnson's 517 East Avenue residence.  Ms. Jackson's affidavit further indicated Mr. Hunter and Mr. Boswell are cousins, and Mr. Boswell is now deceased.  Ms. Jackson averred:

Myself and [Ms. Johnson] and [Mr. Boswell] was at [Ms. Johnson's] [h]ouse on the porch when [Mr. Hunter] walked up coming from Fernwood street. [Mr. Hunter] greeted [Mr. Boswell] and [Mr. Boswell] asked [Mr. Hunter] to [u]se [h]is cell phone and [Mr. Boswell] told us all he needed a little privacy so he was about to walk to [Kelley's] store to make a phone call on the way and would be right back. [Mr. Boswell] left walking through the shortcut behind [Ms. Johnson's] house leading to [Kelley's]. [Mr. Hunter] stayed with me and [Ms. Johnson], on Ms. Johnson's porch and we talked until we heard [two] very loud [g]unshots very close by a few minutes later. At the time we didn't know the shots were coming exactly from [Kelley's] but knew it was close. So close that the three of us went inside [Ms. Johnson's] house. A few minutes later we heard and saw a bunch of cop[] cars and [Mr. Hunter] was kind of frustrated [Mr. Boswell] [h]ad [n]ot [r]eturned with his cell phone. Me or [Ms. Johnson] did not have [c]ell phones of our own at the time so [Mr. Hunter] [l]eft back to his cousin[']s house on Fernwood to call his cell phone to find out where [Mr. Boswell] was.

{¶3} Mr. Hunter, in his affidavit, criticized his trial attorney as "very ineffective," and averred that, prior to trial, his family members discovered that Ms. Johnson no longer resided at 517 East Avenue, but without a last name or cell phone, they were unable to locate her or Ms. Jackson. Additionally, Mr. Hunter averred he told his trial attorney about Ms. Jackson and Ms. Johnson, and also informed his trial attorney that he "let [his] younger cousin [Mr. Boswell] use [his] cell phone prior to the shooting and that [Mr. Boswell] had only told me he lost my cell phone the next day, which was the next time I saw him." Mr. Hunter also requested an evidentiary hearing.

**Motion for New Trial**

{¶4} Simultaneous to filing the motion for leave, Mr. Hunter also filed a motion for new trial "based upon both newly discovered evidence and other evidence collected since trial." In the motion, Mr. Hunter cited several decisions from other appellate districts, none of which are binding upon this Court. Specifically, Mr. Johnson improperly relied upon an Eighth District Court of Appeals decision, *State v. Siller*, 8th Dist. Cuyahoga No. 90865, 2009-Ohio-2874, for the proposition that he must now only show the newly discovered evidence discloses a "reasonable

probability" instead of "a strong probability that it will change the result if a new trial is granted" as required by *State v. Petro*, 148 Ohio St. 505 (1947), syllabus. Mr. Hunter also attached Ms. Jackson's affidavit, his own affidavit, and an unauthenticated transcript from an interview on January 26, 2017, with Lashawna Owens, formerly known as Lashawna Boswell. Notably, Mr. Hunter did not attach a sworn affidavit from Ms. Owens and, in his affidavit, Mr. Hunter admitted to being unsuccessful in his attempts to locate Ms. Owens for the purpose of obtaining her sworn affidavit.

{¶5} In *Hunter I*, this Court summarized Ms. Owens' [Boswell] testimony, on behalf of the State, as follows:

> Lashawna Boswell testified that she is Mr. Hunter's aunt. Ms. Boswell's cousin lives on Fernwood Drive near Kelley's Carryout, and there is a cut through a yard that is adjacent to her cousin's house, on which people can walk to get to Kelley's. From her cousin's living room, she can see the cut through a picture window. On July 19, 2011, Ms. Boswell was drinking alcohol at her cousin's house. She thought that she saw Mr. Hunter's paternal grandmother drop Mr. Hunter off close by, and then believed that she saw Mr. Hunter walk by the Fernwood residence on the cut. About a minute later, her cousin informed her that she heard gunshots. They went outside and saw someone lying on the ground outside of Kelley's, while two employees of Kelley's stood near the body. After asking the Kelley's employees if they needed assistance, Ms. Boswell began performing CPR on the man, and continued to do so until police officers arrived.
>
> On cross-examination, Ms. Boswell acknowledged that she had been drinking heavily on the date at issue, and she was so intoxicated on that day that she did not think her identification of Mr. Hunter was reliable.

*Hunter* at ¶ 12-13. However, in the unauthenticated transcript of the interview from 2017, Ms. Owens claimed she did not see Mr. Hunter walk through the "cut" and she did not see him at Kelley's. Ms. Owens also stated she was not truthful with detectives at the time of the murder when she told them she "believed it was [her] nephew, [Mr. Hunter]." Ms. Owens said she thought Mr. Hunter was involved because he had been spending a lot of time at her house and her gun "came up missing." Further, Ms. Owens explained that when detectives came to her job prior to

trial, she attempted to tell them she lied about Mr. Hunter, but was told if "you don't stick with what you told us [] you will go to jail.  We will press charges.  You will lose your kids."  Mr. Hunter, however, conceded Ms. Owens' unauthenticated transcript of the interview is not newly discovered evidence and was not used "as a basis for the [m]otions in question."  Specifically, Mr. Hunter admitted, "[t]he statement was provided as support for [his] affidavit, not as newly discovered evidence."

**The Judgment Entry**

{¶6}    The trial court collectively ruled upon Mr. Hunter's motions for leave and new trial. In denying Mr. Hunter's motion for a new trial, the trial court reasoned: (1) Mr. Hunter's failure to seek a continuance to discover Ms. Jackson's identity, at the time of trial, now precludes the granting of a new trial; (2) Ms. Owens' unauthenticated statement is not newly discovered evidence; and (3) Mr. Hunter's affidavit, regarding the loaning of his cell phone to Mr. Boswell prior to the shooting, is contrary to claims Mr. Hunter made at trial and in his direct appeal, and is also contrary to statements Mr. Hunter's witnesses made at trial.  The trial court explained that, at trial, Mr. Hunter "claimed" to have "lost" his cell phone prior to its discovery at the murder scene, and Mr. Hunter's own witnesses testified in support of that defense strategy.  As such, the trial court concluded Mr. Hunter's claim that he did not have possession of his cell phone, at or around the time of the murder, is not "new" evidence because similar testimony about a lost cell phone was considered and rejected by the jury.  The trial court further concluded that the "newly discovered" evidence, presented by Mr. Hunter, did not warrant a new trial because Mr. Hunter failed to establish the evidence will "change the result if a new trial is granted and that it does not merely impeach or contradict the former evidence."

{¶7} It is from this Judgment Entry Mr. Hunter appeals, citing three assignments of error. To facilitate our review, we reorganize and consolidate Mr. Hunter's assignments of error.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MR. HUNTER'S MOTION FOR NEW TRIAL, IN VIOLATION OF HIS DUE PROCESS PROTECTIONS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION [] 10 OF THE OHIO CONSTITUTION, BECAUSE THE NEWLY DISCOVERED EVIDENCE IN THE FORM OF DEAYSHEONA JACKSON'S AFFIDAVIT, DISCLOSES A STRONG POSSIBILITY THAT IT WILL CHANGE THE RESULT IF A NEW TRIAL IS GRANTED AND DOES NOT MERELY IMPEACH OR CONTRADICT THE EVIDENCE PRESENTED AT TRIAL.**

**ASSIGNMENT OF ERROR III**

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MR. HUNTER'S MOTION FOR NEW TRIAL WITHOUT FIRST HOLDING AN EVIDENTIARY HEARING, IN VIOLATION OF HIS DUE PROCESS PROTECTIONS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION [] 10 OF THE OHIO CONSTITUTION.**

{¶8} In his first and third assignments of error, Mr. Hunter argues Ms. Jackson's affidavit "clearly does more than just impeach or contradict the evidence produced at trial, it provides for a complete exoneration of Mr. Hunter. As such, Mr. Hunter believes the trial court should have afforded him an evidentiary hearing due to the "strength" of Ms. Jackson's affidavit.

{¶9} The State, in response, argues: (1) the trial judge presided over all proceedings in this case, including the trial, and had firsthand knowledge of the "entire record," to discern the credibility and relevance of Ms. Jackson's affidavit; (2) Mr. Hunter changed his story regarding his physical location at the time of the murder and what occurred with regard to his cell phone prior to the murder, directly contradicting evidence presented by both sides at trial. In fact, Mr.

Hunter filed a Notice of Alibi on May 25, 2012, alleging he was at 1255 Beardsley Avenue, on Akron's southeast side, and not at 517 East Avenue, on Akron's west side, at the time of the murder; and (3) an evidentiary hearing is not required, by the Criminal Rules of Procedure or this Court's precedent, prior to denying a motion for new trial.

### Crim.R. 33(A)(6)-Newly Discovered Evidence

{¶10} Crim.R. 33(A) allows a defendant to move for a new trial when his substantial rights have been materially affected. The rule enumerates several grounds upon which a defendant may seek a new trial, including newly discovered evidence. Crim.R. 33(A)(6). To warrant the granting of a motion for a new trial based upon newly discovered evidence, a defendant must show that the evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 18, quoting *State v. Petro*, 148 Ohio St. 505 (1947), syllabus. We apply an abuse of discretion standard of review when reviewing a trial court's decision to grant or deny a motion for new trial based on newly discovered evidence. *Tolliver* at ¶ 18. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶11} "A motion for new trial based on newly discovered evidence must be filed within 120 days after the day the verdict was rendered, unless the defendant shows 'by clear and convincing proof that [he] was unavoidably prevented from the discovery of the evidence upon

which he must rely [within the 120–day period].'" *State v. Covender,* 9th Dist. Lorain No. 11CA010093, 2012-Ohio-6105, *¶ 12,* quoting Crim.R. 33(B). "'Clear and convincing proof requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *State v. Covender*, 9th Dist. Lorain No. 07CA009228, 2008-Ohio-1453, ¶ 6, quoting *State v. Mathis*, 134 Ohio App.3d 77, 79 (1st Dist.1999), overruled on other grounds, *State v. Condon*, 157 Ohio App.3d 26, 2004-Ohio-2031 (1st Dist.).

{¶12} As indicated above, the trial court collectively entered judgment on both Mr. Hunter's motions for leave and new trial. "Crim.R. 33(B) calls for an initial determination that there was unavoidable delay." *State v. Gilliam*, 9th Dist. Lorain No. 14CA01055, 2014-Ohio-5476, ¶ 11, quoting *State v. Holmes*, 9th Dist. Lorain No. 05CA008711, 2006-Ohio-1310, ¶ 11. "Although a defendant may file his motion for a new trial along with his request for leave to file such motion, the trial court may not consider the merits of the motion for a new trial until it makes a finding of unavoidable delay." (Internal quotations and citations omitted.) *State v. Covender*, 9th Dist. Lorain No. 11CA010093, 2012-Ohio-6105, ¶ 13. Even though the trial court erred by collectively entering judgment on both of Mr. Hunter's motions, "we find that the trial court's error in collectively entering judgment on [Mr. Hunter's] motions is harmless as the trial court's denial of [Mr. Hunter's] motion for new trial is dispositive of the unavoidable delay issue." *Holmes* at ¶ 11.

{¶13} Further, having reviewed the record and this Court's decision in *Hunter I*, we conclude the trial court acted within its discretion when it refused to award Mr. Hunter a new trial on the basis of Ms. Jackson's affidavit. Crim.R. 33(A)(6) only permits a defendant to seek a new trial upon the discovery of "new evidence" that he or she "could not with reasonable diligence

have discovered and produced at the trial." Crim.R. 33(A)(6); *see also Petro*, 148 Ohio St. 505 at syllabus. Thus, if Mr. Hunter could have discovered and produced evidence for trial, then that evidence is not the proper subject of a motion filed under Crim.R. 33(A)(6). *State v. Patton*, 9th Dist. Summit No. 17432, 1996 WL 63028, *3-4, 9 (Feb. 14, 1996). Likewise, Mr. Hunter cannot prevail, pursuant to Crim.R. 33(A)(6), if the motion rests upon evidence that is merely cumulative of former evidence and/or merely contradicts/impeaches former evidence. *See Petro* at syllabus.

{¶14} Here, Ms. Jackson's affidavit is both cumulative and contradictory of evidence presented at Mr. Hunter's trial. First, Ms. Jackson's affidavit merely provides a different version of the same defense theory presented at trial; Mr. Hunter was not present at the shooting and did not have possession of his cell phone immediately prior to the shooting. Second, Ms. Jackson's and Mr. Hunter's affidavits contradict and impeach the testimony of Mr. Hunter's own witnesses, Ms. Ellerbe and Ms. Washington, regarding Mr. Hunter's propensity for "losing" his cell phone, which Ms. Ellerbe agreed was a "bad habit." Ms. Ellerbe, Mr. Hunter's mother, testified Mr. Hunter lost approximately ten cell phones in three or four years. Additionally, Ms. Washington, Mr. Hunter's grandmother, testified she had to "replace" Mr. Hunter's cell lost cell phones when he was on her plan and Mr. Hunter was "irresponsible" in this regard.

{¶15} Based upon Ms. Jackson's affidavit, however, Mr. Hunter now claims he *loaned* his cell phone to his cousin, Mr. Boswell, immediately prior to the shooting. Indeed, Mr. Hunter could have presented this version of the defense theory to the jury but chose not to do so until after the death of Mr. Boswell. Finally, Ms. Jackson's affidavit directly impeaches Mr. Hunter's own notice of alibi, filed with the trial court on May 25, 2012, wherein Mr. Hunter claimed to be at 1255 Beardsley, Akron, Ohio, at the time of the shooting. Even if Mr. Hunter did not know the exact East Avenue address, where he now claims to have been with Ms. Jackson, Ms. Johnson,

and Mr. Boswell, Mr. Hunter could have listed the correct street name with a description of the home in his notice of alibi. Instead, Mr. Hunter listed a totally separate address miles apart from the 517 East Avenue residence. Further, regarding the unauthenticated statement of Ms. Owens, formerly Ms. Boswell, the record indicates the jury heard Ms. Owens testify she "believed" she saw Mr. Hunter walking toward Kelley's a couple minutes prior to the shooting, but she did not tell the police when interviewed at the murder scene because "[she] didn't think it was [Mr. Hunter]." Ms. Owens also admitted, in front of the jury, she did not want to be a witness at trial and she was too drunk to identify Mr. Hunter on July 19, 2011. Obviously, because the jury already heard Ms. Owens' testimony, in this regard, her 2017 unauthenticated statement is not "new" evidence.

{¶16} Therefore, for the reasons articulated above, the trial court did not abuse its discretion in denying Mr. Hunter's motion for new trial because the "new" evidence, presented by Mr. Hunter, did not disclose a strong probability that it will change the result if a new trial is granted, and the "new" evidence merely impeached and/or contradicted the former evidence.

### Lack of Evidentiary Hearing

{¶17} Mr. Hunter also asserts the trial court abused its discretion in denying his motion for new trial without an evidentiary hearing. This Court has previously stated, "the decision on whether the motion warrants a hearing also lies within the trial court's discretion." (Internal citations and quotations omitted.) *State v. Cleveland*, 9th Dist. Lorain No. 08CA009406, 2009-Ohio-397, ¶ 45. Thus, Mr. Hunter must show that the trial court's decision to not hold a hearing was unreasonable, arbitrary, or unconscionable. *State v. Roper*, 9th Dist. Summit No. 22494, 2005-Ohio-4796, ¶ 15.

{¶18} In the present matter, the trial court is very familiar with this record due to presiding over Mr. Hunter's case from its inception through trial, sentencing, and post-conviction motions. Further, in the order denying Mr. Hunter's motion for new trial and request for an evidentiary hearing, the trial court stated: "[t]he [c]ourt has considered [Mr. Hunter's] [m]otion, the [m]emorandum filed by [] [the State], [Mr. Hunter's] [r]eply [], the facts of this matter, Crim.R. 33, and applicable law." Moreover, in its analysis, the trial court discussed Ms. Jackson's affidavit, Mr. Hunter's affidavit and Ms. Owens' unauthenticated statement. Clearly, in rendering its decision, the trial court reviewed and considered all of the briefing and evidence before it. Mr. Hunter, however, does not explain how the trial court's refusal to hold a hearing in *this case* was unreasonable, arbitrary, or unconscionable, or demonstrate what other information or evidence he would have presented at an evidentiary hearing. In light of the fact that the trial court already had sufficient information before it to support denying Mr. Hunter's motion for new trial, we cannot find the trial court abused its discretion in determining a hearing on the motion was not necessary. *See Roper* at ¶ 16.

{¶19} Accordingly, Mr. Hunter's first and third assignments of error are overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MR. HUNTER'S MOTION FOR NEW TRIAL, IN VIOLATION OF HIS DUE PROCESS PROTECTIONS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION [] 10 OF THE OHIO CONSTITUTION, ON THE BASIS OF HIS NOT HAVING SOUGHT A CONTINUANCE PRIOR TO TRIAL TO LOCATE DEAYSHEONA JACKSON.**

{¶20} In his second assignment of error, Mr. Hunter argues the trial court abused its discretion in denying his motion for new trial because he failed to seek a continuance to locate Ms. Jackson, an alibi witness, at the time of trial. However, as fully discussed above, this Court already

determined the trial court did not abuse its discretion in denying Mr. Hunter's motion for new trial for other reasons articulated in *Petro*, *supra*, at syllabus, regarding Mr. Hunter's failure to show Ms. Jackson's affidavit, in conjunction with his own affidavit: (1) disclose a strong probability that they will change the result if a new trial is granted; and (2) do not merely impeach or contradict the former evidence. Thus, this assignment of error has been rendered moot by this Court's disposition of Mr. Hunter's first and third assignments of error and will not be addressed. *See* App.R. 12(A)(1)(c).

III.

{¶21} For the reasons stated above, Mr. Hunter's first and third assignments of error are overruled, Mr. Hunter's second assignment of error is moot, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                        _____
                                        BETTY SUTTON
                                        FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

GEVONTE D. HUNTER, pro se, Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.