[Cite as *Shaker Hts. v. Thompson*, 2026-Ohio-1871.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

CITY OF SHAKER HEIGHTS,                     :

    Plaintiff-Appellee,                 :

                                       No. 115785

    v.                                  :

ANDRE D. THOMPSON,                          :

    Defendant-Appellant.                :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 21, 2026

---

Criminal Appeal from the Shaker Heights Municipal Court
Case No. 02CRB00557

---

## *Appearances:*

C. Randolph Keller, City of Shaker Heights Chief Prosecutor, *for appellee.*

Andre D. Thompson, *pro se.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Andre D. Thompson appeals the trial court's judgment denying his renewed motion to withdraw plea and vacate conviction pursuant to Crim.R. 32.1. Finding no merit to the appeal, we affirm.

## I. Facts and Procedural History

### A. Original Proceedings in 2002 and 2003

{¶ 2} On or about July 1, 2002, appellant struck M.L. twice in the head with an open hand, knocking her to the ground. M.L. sustained two scratches to her left shoulder. Appellant was issued a criminal citation alleging that he had caused or attempted to cause physical harm to M.L., a family or household member, in violation of Shaker Heights' domestic violence ordinance.

{¶ 3} According to the record, appellant appeared in Shaker Heights Municipal Court on February 25, 2003. He executed a plea form indicating that he had been informed of and understood his constitutional rights, that he thereafter "knowingly, intelligently, and voluntarily" chose to proceed in pleading either guilty or no contest, that he waived his right to trial by jury, and that he waived his right to be represented by an attorney. Under the section captioned "Pleading," which includes a check box labeled "Guilty" and another labeled "No Contest," appellant checked the box labeled "No Contest." The form bears appellant's signature as well as the signature of a witness.[1]

{¶ 4} The trial judge, the Honorable K.J. Montgomery, entered judgment the same day.[2] The trial court's journal entry, also completed on a form and signed by

---

[1] The witness's name is not printed and cannot be discerned from the signature alone.

[2] Pursuant to Loc.App.R. 22(C), we avoid identifying the trial judge by proper name "unless such reference is essential to clarify or explain the role of such person in the course of said proceedings." In this case the identity of the judge who presided over appellant's plea hearing is relevant to the issue of whether the trial court could possess "an independent

Judge Montgomery, indicated that appellant appeared on February 25, 2003, "without counsel, counsel having been waived in writing[.]" It noted that appellant entered a plea of no contest to the charge of domestic violence. The trial court did not check the box indicating "Consent to a finding of guilty." Instead, it selected the box labeled "Evidence heard." The trial court found appellant guilty of domestic violence and imposed a sentence.

## B. Appellant's 2019 Motion to Vacate Conviction

{¶ 5} On December 23, 2019, appellant filed a pleading captioned "Motion to Vacate Conviction for Lack of Fully Knowing and Intelligent Plea." In his motion, appellant stated that he had been indicted in a federal drug case and was "facing a greatly enhanced sentence because of potential classification as a career offender" because of his 2003 domestic-violence conviction. In arguing that his 2003 plea of no contest was not entered into knowingly and intelligently, appellant claimed he had not been informed that his domestic-violence conviction "could have future adverse legal consequences" and that "fundamental fairness dictates that this conviction be vacated." In an accompanying sworn statement — not an affidavit —

---

recollection of the proceedings" for purposes of settling any proposed App.R. 9(C) statement. *State v. Hunt*, 2019-Ohio-1982, ¶ 2 (8th Dist.). We take judicial notice of the fact — generally known and readily verifiable — that Judge Montgomery passed away on January 17, 2023. Evid.R. 201(B). *See, e.g., Lanier v. Battle*, 2020-Ohio-1251, ¶ 1 (10th Dist.) (taking judicial notice of death of appellee as reported in local news publication); *State ex rel. Cincinnati Enquirer v. Heath*, 2009-Ohio-3415, ¶ 1, fn. 1 (12th Dist.) (taking judicial notice of death of respondent judge). Furthermore, "pursuant to Evid.R. 201(F), judicial notice may be taken at any stage of the proceeding, including on appeal." *In re Affidavits for Probable Cause*, 2016-Ohio-856, ¶ 7 (8th Dist.), citing *State v. Mays*, 83 Ohio App.3d 610, 614 (4th Dist. 1992).

appellant stated that had he known of the potential enhancement of a future sentence he "would NOT have pled."

{¶ 6} In a journal entry dated January 7, 2020, the trial court entered an order stating that appellant's "[m]otion can not be considered as prosecutor was not served."

### C. Appellant's 2020 Motion to Vacate Conviction

{¶ 7} The record does not indicate that any further action was taken on appellant's December 23, 2019 motion. Instead, appellant filed what appears to be an identical copy of his motion to vacate conviction, along with an identical sworn statement, on February 7, 2020. On March 3, 2020, the trial court journalized an entry denying the motion. No appeal followed.

### D. Appellant's 2025 Motion to Withdraw Plea

{¶ 8} On October 20, 2025, appellant filed the pleading that is the subject of this appeal, captioned "Renewed Motion to Withdraw Plea and Vacate Conviction Pursuant to Crim.R. 32.1." By the time appellant filed his renewed motion, the trial court judge who presided over his plea hearing had passed away. Appellant argued that his renewed motion was "supported by new and material grounds that were not present or available at the time of the prior filing[.]" Appellant provided no supporting affidavits. He nevertheless argued that he was unable to obtain a transcript or audio recording of the 2003 plea colloquy "despite due diligence[,]" which rendered him unable "to confirm that the court advised [him] of essential rights and consequences." He further relied upon the aforementioned collateral

consequences of the conviction, including "federal sentencing enhancement and firearms disability" and "employment and housing barriers" not fully understood or explained to him at the time of the plea and "enduring mental-health and stability impacts." Even putting aside the lack of affidavits, appellant did not explain how any of this was "new."

{¶ 9} In short, appellant contended that the lack of a transcript or audio recording of the 2003 plea colloquy prevented verification that his plea was made knowingly, intelligently, and voluntarily. Appellant contended that he entered his plea of no contest "without a full appreciation of substantial collateral effects," rendering the plea "not truly knowing and intelligent."

{¶ 10} Appellant also advanced arguments grounded in "[e]quity and interests of justice," including the age of the conviction and his "demonstrated rehabilitation." He also pointed to continuing "psychological and social consequences" because of his criminal record.

{¶ 11} Appellant attached two exhibits to his motion. Exhibit A purports to be an October 10, 2025 email from a Shaker Heights Municipal Court deputy clerk, albeit in what appears to be a copy-and-paste by appellant rather than a printout. The email indicates that "audio recordings would not be available" for appellant's February 25, 2003 hearing because Sup.R. 26.05(C) requires recordings to be retained for only five years after final judgment. Exhibit B is a list of authorities.

{¶ 12} The trial court denied the motion to withdraw plea, without opinion, on October 21, 2025. This timely appeal followed.

## II. Assignments of Error

{¶ 13} Appellant presents four assignments of error for our review:

Assignment of Error I

The trial court erred by entering a conviction based on a no-contest plea when no record exists demonstrating compliance with Crim.R. 11 and *Boykin v. Alabama.*

Assignment of Error II

The trial court abused its discretion by failing to consider the substantial and ongoing collateral consequences of the conviction, in violation of *State v. Sarkozy* and *State v. Sanders.*

Assignment of Error III

The trial court abused its discretion by denying Appellant's Crim.R. 32.1 post-sentence motion to withdraw the plea without holding a hearing, despite the presentation of operative facts requiring factual development under *State v. Xie* and *State v. Jones.*

Assignment of Error IV

The trial court erred by failing to correct or reconstruct the destroyed plea record under App.R. 9(E), leaving the record structurally defective and preventing meaningful appellate review.

{¶ 14} We find no merit to any of appellant's assigned errors. Accordingly, we affirm the trial court's judgment denying his motion to withdraw his plea.

## III. Analysis

### A. Standard of Review

{¶ 15} Crim.R. 32.1, which governs motions to withdraw guilty or no contest pleas, provides that "a motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; *but to correct manifest injustice the court after sentence* may set aside the judgment of conviction and permit the defendant to

withdraw his or her plea." (Emphasis added.) *See State v. Williamson*, 2007-Ohio-6812, ¶ 4 (8th Dist.). The rule therefore permits a postsentence motion to withdraw guilty or no contest pleas "only to correct a manifest injustice." *Id.*, citing *State v. Xie*, 62 Ohio St.3d 521, 526 (1992), and *State v. Grigsby*, 80 Ohio App.3d 291, 299 (8th Dist. 1992). Moreover, "[a] defendant seeking to withdraw a plea of guilty after sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 264 (1977), citing *United States v. Mainer*, 383 F.2d 444, 445 (3d Cir. 1967). *See also Williamson* at ¶ 4.

{¶ 16} By its terms, Crim.R. 32.1's requirement to demonstrate "manifest injustice" in a postsentence motion applies to both guilty pleas and pleas of no contest. Accordingly, we have evaluated motions to withdraw guilty and no contest pleas under the same standard. *See, e.g., State v. Knox*, 2015-Ohio-424, ¶ 3-11 (8th Dist.) (no contest plea); *Williamson* at ¶ 1-4 (same).

{¶ 17} "Manifest injustice" has been defined as a "clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998), citing *Webster's Third New International Dictionary* (1986). In this context, such a "clear or openly unjust act" is evidenced by "an extraordinary and fundamental flaw in the plea proceeding." *State v. Hamilton*, 2008-Ohio-455, ¶ 8 (8th Dist.), citing *State v. Lintner*, 2001-Ohio-3360 (7th Dist.), and *State v. Wheeler*, 2002-Ohio-284 (2d Dist.). *See also State v. Morris*, 2026-Ohio-37, ¶ 8 (8th Dist.). "[I]t is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." *Smith* at 264, citing *United States v. Semel*, 347 F.2d 228, 229

(4th Cir. 1965). *See also Morris* at ¶ 8. This is because "[a] manifest injustice 'comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.'" *State v. Hubbard*, 2025-Ohio-2150, ¶ 10 (8th Dist.), quoting *State v. Sneed*, 2002-Ohio-6502, ¶ 13 (8th Dist.).

{¶ 18} "The determination of whether a defendant has demonstrated a manifest injustice is left to the sound discretion of the trial court." *State v. Jones*, 2019-Ohio-4355, ¶ 13 (8th Dist.). We therefore "review a trial court's determination of whether a defendant demonstrated a manifest injustice for an abuse of discretion." *Id.* A trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter v. Troutman*, 2025-Ohio-366, ¶ 64 (8th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). *See also State v. McAlpin*, 2026-Ohio-148, ¶ 14.

{¶ 19} Furthermore, a trial court "is not required to hold a hearing on every postsentence motion to withdraw a guilty plea." *Jones* at ¶ 14, citing *State v. Vihtelic*, 2017-Ohio-5818, ¶ 11 (8th Dist.), citing *State v. Chandler*, 2013-Ohio-4671, ¶ 7 (10th Dist.). "'A hearing is required only if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea.'"

*Jones* at ¶ 14, quoting *Vihtelic* at ¶ 11. We review the trial court's decision whether to hold a hearing on a postsentence motion to withdraw a plea for an abuse of discretion. *Jones* at ¶ 14, citing *Vihtelic* at ¶ 11.

## B. The Lost Record of the Plea Proceeding and the Presumption of Regularity

{¶ 20} In his first assignment of error, appellant essentially argues that because no record of the 2003 plea hearing now exists, Shaker Heights cannot demonstrate that his plea was made knowingly, voluntarily, and intelligently. Ipso facto, he wins: The trial court must permit him to withdraw his plea, and his conviction must be vacated. Such an argument, however, ignores which party is at fault for the unavailability of the transcript or audio recording of the plea. It also impermissibly shifts the burden from appellant to Shaker Heights, conveniently eliminating appellant's burden of demonstrating manifest injustice, i.e., that there was an extraordinary and fundamental flaw in the plea proceeding.

{¶ 21} "To invalidate a plea, the record must affirmatively show that the defendant was not informed of his rights or that the plea was otherwise defective." *Olmsted Twp. v. Campanalie*, 2025-Ohio-5851, ¶ 14 (8th Dist.), citing *Boykin v. Alabama*, 395 U.S. 238 (1969), and *State v. Nero*, 56 Ohio St.3d 106 (1990). Here, there is no transcript or recording of the plea. Shaker Heights cites the five-year retention requirement of Sup.R. 26.05(C) and, without directly stating that any recording or transcript of the February 25, 2003 plea hearing was destroyed pursuant to the rule, concedes that there is no existing transcript or audio recording of the hearing. As Shaker Heights notes, however, appellant's argument "that the

lawful destruction of a decades-old plea proceeding transcript delegitimizes the plea" actually "inverts state law." (Appellee's brief at p. 5.) Appellant would have us presume manifest injustice. But that is not the law. Rather, "[a] presumption of regularity attaches to all judicial proceedings." *State v. Raber*, 2012-Ohio-5636, ¶ 19. That presumption applies in cases where a record of the underlying trial court proceedings is unavailable. As the Ohio Supreme Court wrote:

> When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.

*Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

{¶ 22} In other words, where there is no transcript or audio recording, as in this case, "[t]here is no showing of irregularity to contradict the presumption of regularity accorded all judicial proceedings." *Raber* at ¶ 19, quoting *State v. Sweet*, 72 Ohio St.3d 375, 376 (1995). *See also State v. Ward*, 2017-Ohio-933, ¶ 17 (8th Dist.) ("[A] silent record" means there is no showing of irregularity to contradict the presumption of regularity.).

{¶ 23} The rule announced in *Knapp* is not without limits. Indeed, in that case the Ohio Supreme Court remanded the matter because even though the plaintiffs could have explored the options of an App.R. 9(C) proposed statement or an App.R. 9(D) agreed statement, the plaintiffs were not at fault in their inability to provide a verbatim trial transcript: It had been delayed because of the court reporter's health. *Id.* at 199-200.

{¶ 24} This court directly addressed the question of fault in *State v. Hunt*, 2019-Ohio-1982 (8th Dist.). Sitting en banc, this court posed and answered the following question: "When a criminal defendant alleges a violation of Crim.R. 11, the transcript of the plea hearing is unavailable, and the trial judge lacks a specific recollection of the plea, under what circumstances can our court presume regularity in the plea proceedings?" *Id*. at ¶ 2.

{¶ 25} *Hunt*, like the present action, involved a trial court record in which the transcript of the plea proceeding had been lawfully destroyed under governing records-retention law. In that case, Hunt filed a delayed appeal challenging "different aspects of the guilty plea process, *the general crux of which centers on the knowing, voluntary, or intelligent nature of Hunt's guilty pleas* or the trial court's adherence to the guilty plea process in capital cases[.]" (Emphasis added.) *Hunt* at ¶ 8. As in the present action, the transcript of proceedings had not been preserved, a fact the clerk of courts confirmed:

> [R]eview . . . is hampered by the lack of a record from the 1994 convictions. The transcript of proceedings was not indefinitely preserved, and as permitted under R.C. 2301.20(B), the transcripts are no longer available. One of the exhibits attached to a motion filed with the trial court dealing with the App.R. 9(C) statement is a letter from the Cuyahoga County Clerk of Courts confirming that the transcript from Hunt's plea hearing was no longer available because ten years had elapsed after his final conviction.

*Id*. at ¶ 8.

{¶ 26} The trial court also "tacitly indicated the lack of an independent recollection of the proceedings necessary to settling the record through App.R. 9. In

other words, the trial court was unable to settle the record given the age of the conviction." *Id.* at ¶ 10.

{¶ 27} This court noted that the Ohio Supreme Court had held that "'[a] criminal defendant must suffer the consequences of nonproduction of an appellate record where such nonproduction is caused by his or her own actions.'" *Id.* at ¶ 2, quoting *State v. Jones*, 71 Ohio St.3d 293, 297 (1994). More specifically, where "the record is not kept beyond the period prescribed by [law], the defendant is considered to be 'at fault' as contemplated under *Jones* for nonproduction of the record. In such cases, the presumption of regularity applies." *Hunt* at ¶ 5, citing *State v. Frazier*, 1990 Ohio App. LEXIS 1457 (8th Dist. Apr. 12, 1990). *See also Hunt* at ¶ 3 ("[A]fter the transcript of proceedings becomes unavailable through time and as permitted [by law], the defendant is considered to be at fault for the lack of a record.").

{¶ 28} Before continuing our discussion of *Hunt*, we observe that "'[i]f a transcript is "unavailable" an appellant has an obligation to provide a complete record pursuant to App.R. 9(C), (D) or (E).'" *Campanalie*, 2025-Ohio-5851, ¶ 9 (8th Dist.), quoting *State v. Davis*, 1992 Ohio App. LEXIS 338, *11 (8th Dist. Jan. 30, 1992). We note that *Campanalie* is procedurally distinct from the present case. *Campanalie*, a direct appeal, involved a presentence motion to withdraw a plea. In addition, the gap in the record was not the fault of the defendant. Rather, "the audio recording of the . . . plea hearing was unavailable because of a technical failure." *Id.* at ¶ 5. Even though the trial judge was no longer available, the parties submitted competing App.R. 9(C) statements, and the trial court's administrative judge settled

and approved the record. *Id.* at ¶ 5-6. This court found an adequate basis to settle the record and that appellant had not affirmatively stated that the trial court failed to comply with Crim.R. 11. *Id.* at ¶ 11 and 17. It held that "[i]n the absence of evidence demonstrating a defect in the plea process, the presumption of regularity applies." *Id.* at ¶ 19.

{¶ 29} Here, appellant did not submit a proposed App.R. 9(C) statement to the court or attempt to secure an agreed statement from Shaker Heights under App.R. 9(D).[3] He could have made some effort, despite the death of the trial judge. Appellant nevertheless made no documented efforts to prepare a narrative account of the plea proceedings.

{¶ 30} This returns us to *Hunt*, 2019-Ohio-1982 (8th Dist.). We are skeptical that any narrative account of the plea hearing filed solely by appellant and alleging a violation of Crim.R. 11 would suffice to overcome the presumption of regularity. Hunt had "filed a document containing his recollections of the proceedings[.]" *Id.* at ¶ 10. This court, however, found that

> such a document is insufficient against the presumption of regularity that may be applied in light of Hunt's failure to timely prosecute this delayed appeal. *Frazier.* Hunt cannot profit from self-serving statements that cannot be contested because of his dilatory behavior. Because Hunt is responsible for the nonproduction of the factual record, this appeal can only proceed on those issues for which a factual record is unnecessary. *Jones.*

*Hunt* at ¶ 10.

---

[3] Appellant's only attempt to clarify the record appears to be his App.R. 9(E) motions filed in the trial court on November 21, 2025, and with this court on December 2, 2025. Those motions are addressed in our discussion of appellant's fourth assignment of error.

{¶ 31} While Hunt involved a delayed appeal rather than a postconviction motion, we view that distinction as irrelevant. Here, similar to *Hunt*, "[t]he failure to produce the transcript was directly caused by the defendant's failure to prosecute" his postconviction motion "in a more timely fashion." *Id.* at ¶ 9, citing *Frazier*, 1990 Ohio App. LEXIS 1457 (8th Dist.). "In other words, the presumption of regularity applies in instances in which the defendant" delays filing until "after the record is no longer available" because of its lawful destruction. *Id.* The *Hunt* Court stated:

> Hunt's claims *that his plea was not knowingly, voluntarily, or intelligently entered* or that the trial court failed to comply with the dictates of *Green, all of which are dependent on the nonexistent transcript*, are without merit. We must presume regularity in the proceedings and that the three-judge panel complied with *Green* and Crim.R. 11. Further, the final entry of conviction indicates that Hunt was notified of his constitutional rights during the plea process and Hunt has not demonstrated any other legal error from the available record of the proceedings.

(Emphasis added.) *Hunt* at ¶ 10-11.

{¶ 32} Here, appellant waited nearly two decades to file his first two motions to vacate his conviction and more than two decades to file the motion to withdraw his plea. By that time, any audio recording or transcript of the plea proceedings had long since been lawfully destroyed pursuant to Sup.R. 26.05(C). Appellant, therefore, is at fault with respect to nonproduction of a transcript or recording of the plea proceedings. *Hunt* and other cases require that we presume regularity, i.e., compliance with Crim.R. 11.

{¶ 33} Furthermore, and similar to *Hunt*, the record contains a plea form confirming that appellant had been advised of his constitutional rights and that his

plea was being entered knowingly, intelligently, and voluntarily. As discussed in *Campanalie*, 2025-Ohio-5851 (8th Dist.), this aspect of the case further disposes of appellant's argument premised on *Boykin*, i.e., that we cannot presume regularity of the trial court's plea proceedings because of a "silent record." In *Boykin*, "the United States Supreme Court reversed a conviction where the record was *entirely silent* as to whether the defendant knowingly and voluntarily waived his constitutional rights." (Emphasis added.) *Campanalie* at ¶ 16. The record in *Boykin* featured "no plea colloquy, no journal entry reflecting advisement of rights, and no substitute record." *Id.* at ¶ 16. The *Campanalie* Court found not only that an adequate App.R. 9(C) statement had been constructed but also that there were contemporaneous entries in the record reflecting that appellant was advised of his rights and entered a knowing, voluntary, and intelligent plea. *Id.* at ¶ 16-17.

{¶ 34} Here, as in *Campanalie*, the contemporaneous record contains the plea form that appellant signed acknowledging that he had been informed of his rights and that he thereafter "knowingly, intelligently, and voluntarily" chose to enter a plea of no contest.

{¶ 35} *Boykin* is further distinguishable because there was no suggestion in that case that the lack of a plea colloquy was the defendant's own fault. As a result, *Hunt* remains directly on point. This appeal would "be easily resolved upon reviewing the transcript of the proceedings." *Hunt* at ¶ 8. Appellant's argument that his plea was not knowingly, voluntarily, or intelligently entered rests not on any allegation that the trial court failed to comply with a specific portion of Crim.R. 11

but rather on the nonexistence of a transcript. Appellant is to blame for its loss. We are required, in this context, to presume regularity with respect to the trial court's adherence to its obligations under Crim.R. 11.

{¶ 36} Appellant's cases to the contrary either do not support the propositions for which they are cited or are apparent fabrications (or very possibly hallucinated cases generated by one or more artificial intelligence services). In *Nero*, 56 Ohio St.3d 106 (1990), which actually exists, the Ohio Supreme Court reviewed the record and held that under the totality of the circumstances the trial court had substantially complied with Crim.R. 11(C)(2)(a) when it "accepted a guilty plea for the nonprobationable crime of rape without informing the defendant that he was not eligible for probation." *Id.* at 107. *Nero* did not involve an unavailable trial court transcript and contains no discussion of the presumption of regularity.

{¶ 37} Appellant's citation to *State v. Stewart*, 51 Ohio St.2d 86 (1977), is no more helpful than his reference to *Nero*. In *Stewart*, the defendant argued that the "trial court failed to advise him that in pleading guilty to murder (R.C. 2903.02), he would not be eligible for probation." (Footnotes omitted.) *Id.* at 87. The Ohio Supreme Court reviewed the record and found substantial compliance with Crim.R. 11 and lack of prejudice to the defendant. Once again, that case did not feature a missing or destroyed plea transcript or the presumption of regularity.

{¶ 38} We agree with Shaker Heights that the remaining cases cited by appellant in support of this assignment of error appear to be fabrications or hallucinations. We therefore decline to consider any of the propositions for which

he cites them. We further note that appellant's reply brief, which focuses exclusively on the presumption of regularity, cites no cases whatsoever. It is limited to rhetorical propositions that, without any discussion of actual law, directly contradict this court's holding in *Hunt*.

{¶ 39} Appellant's first assignment of error is overruled.[4]

## C. Alleged Failure to Consider Collateral Consequences

{¶ 40} In his second assignment of error, appellant argues that the "trial court abused its discretion by failing to consider the substantial and ongoing collateral consequences of the conviction[.]" Appellant appears to be arguing that the trial court, when issuing its decision on his motion to withdraw, was required to specifically address certain "collateral consequences" that he deems "legally relevant," such as "housing denial, employment barriers, firearm disability, reputational stigma, and enhanced sentencing exposure[.]" (Appellant's brief at p. 8.)

---

[4] We note in passing that "[t]his court has recognized that the doctrine of res judicata bars all claims raised in a Crim.R. 32.1 motion that were raised or could have been raised in a prior proceeding, including a direct appeal." *State v. Poole*, 2012-Ohio-2622, ¶ 7 (8th Dist.). *See also State ex rel. Carr v. Saffold*, 2015-Ohio-531 (8th Dist.) (applying res judicata to bar a second Crim.R. 32.1 motion). Putting aside the issue of a direct appeal, appellant filed a motion to vacate his conviction in February 2020 arguing that his plea was not knowing, intelligent, and voluntary because of the trial court's purported failure to inform him of potential "future adverse legal consequences." The trial court denied that motion on the merits, and no appeal followed. We decline to apply or further discuss the doctrine of res judicata, however, pursuant to the principle of party presentation. *See Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4 ("Under the principle of party presentation, 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'"), quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

**{¶ 41}** To the extent appellant is suggesting the trial court was required to issue an opinion or otherwise explain its rationale for denying his motion to withdraw, that is incorrect as a matter of law. "Crim.R. 32.1 does not require a trial court to issue findings of fact and conclusions of law in denying a motion to withdraw a plea." *State v. Said*, 2021-Ohio-3360, ¶ 35 (8th Dist.), citing *State v. Mitchell*, 2020-Ohio-3726, ¶ 11 (8th Dist.), *State v. Skipworth*, 2016-Ohio-3069, ¶ 15 (8th Dist.), and *State v. Linder*, 2013-Ohio-5018, ¶ 9 (8th Dist.). Accordingly, there is no merit to appellant's argument "that the trial court erred or abused its discretion in denying his motion without explanation." *Said* at ¶ 35.

**{¶ 42}** Notably, appellant again cites cases that either do not stand for the propositions for which he offers them or that appear to be fabricated or hallucinated. *State v. Francis*, 2004-Ohio-6894, a real case, involved the interplay of Crim.R. 32.1 and R.C. 2943.031. The latter requires certain advisements as to the effect of a plea on possible deportation, denial of admission to the United States, or denial of naturalization. The Ohio Supreme Court determined that the statute "makes apparent the General Assembly's intent to free a noncitizen criminal defendant from the 'manifest injustice' requirement of Crim.R. 32.1 and to substitute R.C. 2943.031(D)'s standards in its place." *Id.* at ¶ 26. The Ohio Supreme Court explained:

> The General Assembly has apparently determined that due to the serious consequences of a criminal conviction on a noncitizen's status in this country, a trial court should give the R.C. 2943.031(A) warning, and that failure to do so should not be subject to the manifest-injustice standard even if sentencing has already occurred.

*Id*. at ¶ 26. In other words, the General Assembly "created a substantive statutory right for certain criminal defendants and . . . this right therefore prevails over the general procedural provisions of Crim.R. 32.1." *Id*. at ¶ 27. *Francis*, by its terms, was limited to this substantive statutory right. Appellant has not argued that any items on his list of collateral consequences fit within any such exceptions.

{¶ 43} In *State v. Sarkozy*, 2008-Ohio-509, the Ohio Supreme Court held that the trial court had "completely failed" to comply with a portion of Crim.R. 11 where it "failed, before it accepted the guilty plea, to inform the defendant of the mandatory term of postrelease control, which was a part of the maximum penalty[.]" *Id*. at ¶ 22. As this very sentence illustrates, the key to *Sarkozy* was the Ohio Supreme Court's finding that a "mandatory term of postrelease control" is "part of the maximum penalty" attendant to a plea for purposes of Crim.R. 11(C)(2)(a), which requires a trial court to inform a defendant of, inter alia, "the maximum penalty involved." Appellant has not suggested that the collateral consequences he complains of could be considered part of his potential sentence at all, much less part of the maximum penalty for his domestic-violence conviction.

{¶ 44} In short, we fail to see how *Francis* and *Sarkozy* aid appellant's argument that the trial court was required to specifically advise him of a panoply of collateral consequences at the time of the plea or that the trial court was required to issue findings of fact and conclusions of law (or any written opinion whatsoever) in ruling on his Crim.R. 32.1 motion. Neither case stands for either proposition.

{¶ 45} As noted above, the remaining cases appellant cites in support of his second assignment of error are either hallucinated or fabricated. We decline to address any associated statements of law.

{¶ 46} Appellant's second assignment of error is overruled.

### D. Denial of Crim.R. 32.1 Motion Without a Hearing

{¶ 47} In his third assignment of error, appellant argues that the trial court "abused its discretion by denying [his] Crim.R. 32.1 post-sentence motion to withdraw the plea without holding a hearing, despite the presentation of operative facts requiring factual development[.]" Appellant argues that because there is no record of the hearing, "[n]one of the relevant facts can be resolved without testimony" regarding several topics. (Appellant's brief at p. 9.) Appellant lists these topics as "what the court advised during the plea"; "whether constitutional rights were explained"; "whether [a]ppellant understood the consequences"; and "what the State represented about the missing witness."

{¶ 48} As we discussed in outlining the standard of review, in the context of a postsentence motion to withdraw a plea "'a hearing is required only if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea[,]'" and we review for an abuse of discretion. *State v. Hubbard*, 2025-Ohio-2150, ¶ 11 (8th Dist.), quoting *Vihtelic*, 2017-Ohio-5818, at ¶ 11 (8th Dist.). "Furthermore, a postsentence motion to withdraw a guilty plea is subject to denial without a hearing 'when the record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents

sufficient to demonstrate a manifest injustice.'" *State v. Knowles*, 2011-Ohio-1685, ¶ 22 (8th Dist.), quoting *State v. Russ*, 2003-Ohio-1001, ¶ 12 (8th Dist.).

{¶ 49} Our resolution of appellant's first assignment of error largely moots his third assignment of error. We must presume the regularity of proceedings in the trial court, including its advisements to appellant regarding his constitutional rights and his contemporaneous understanding of those rights, as well as the consequences of his plea.

{¶ 50} In addition, however, appellant failed to submit any "evidentiary documents" to demonstrate a manifest injustice entitling him to extraordinary relief. Appellant's motion was not accompanied by an affidavit from him or from anyone else. Moreover, the only "facts" alleged by defendant are his claims that the trial court did not advise him of certain collateral consequences that have allegedly flowed from his conviction, including difficulties obtaining housing, social stigma, enhanced sentencing in unrelated criminal proceedings, and federal firearm disabilities. Once again, appellant supplied no affidavits to establish the supposed collateral consequences that are tangible and subject to verification (for example, an applied sentencing enhancement).

{¶ 51} Moreover, this court has held that "a trial court is not required to inform an accused about collateral consequences to a plea, including potential outcomes that do not have an effect on the sentence when the judge accepts the plea." *State v. Resto*, 2020-Ohio-4299, ¶ 26 (8th Dist.), citing *State v. Moore*, 1998 Ohio App. LEXIS 3293, *4 (8th Dist. Aug. 27, 1998), and *State v. Beatty*, 2000 Ohio

App. LEXIS 5821, *10 (8th Dist. Dec. 14, 2000). "'[I]n order for a plea to be knowing, voluntary, and intelligent, a defendant must only be made aware of the *direct* consequences of the plea, and the trial court is not required to inform the defendant of all possible *collateral* consequences.'" (Emphasis added.) *State v. Radovanic*, 2013-Ohio-4157, ¶ 15 (10th Dist.), quoting *State v. Dumas*, 2008-Ohio-4896, ¶ 14 (8th Dist.). A direct consequence of a plea is "an immediate and automatic consequence." (Cleaned up.) *Radovanic* at ¶ 15.

{¶ 52} We agree with Shaker Heights that all of the consequences appellant lists, with the possible exception of the federal firearms disability, are collateral rather than direct consequences of his plea. This includes the potential for sentencing enhancement. *See, e.g., King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) ("A conviction's possible enhancing effect on subsequent sentences has been held to be merely a collateral consequence of a guilty plea, about which a defendant need not be advised, even when there was a pending investigation into the charge upon which the subsequent sentence was based.").

{¶ 53} As for the firearms disability, appellant's arguments are foreclosed by R.C. 2943.033(C). That statute provides, in pertinent part, that a "plea may not be vacated based on a failure to inform the person so charged regarding" federal firearm restrictions.

{¶ 54} In what has clearly become a pattern, appellant cites one real case that does not stand for the proposition offered, *State v. Xie*, 62 Ohio St.3d 521 (1992). *Xie*, however, addressed "guidelines for a trial court to use when ruling on a

*presentence* motion to withdraw a guilty plea." (Emphasis added.) *Id.* at 526. The Ohio Supreme Court remarked that "a *presentence* motion to withdraw a guilty plea should be freely and liberally granted . . . and [t]herefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." (Emphasis added). *Id.* at 527. *Xie* has no bearing on appellant's right to a hearing on his postsentence motion.

{¶ 55} The two additional cases appellant cites appear to be hallucinations or fabrications. We decline to address the associated propositions of law.

{¶ 56} The trial court did not abuse its discretion in denying appellant's postsentence motion to withdraw without a hearing. Appellant's third assignment of error is overruled.

### E. Application of App.R. 9(E)

{¶ 57} In his fourth assignment of error, appellant contends that the trial court "erred by failing to correct or reconstruct the destroyed plea record under App.R. 9(E), leaving the record structurally defective and preventing meaningful appellate review."

{¶ 58} This assignment of error is likewise resolved in large part by our disposition of appellant's first assignment of error. Thanks to a delay of more than 20 years, occasioned exclusively by appellant's lack of diligence, he alone was to blame for the loss of any transcript or recording of the plea proceedings.

{¶ 59} In addition, as discussed above, appellant took no steps to resolve the record deficiency through either App.R. 9(C) or 9(D). Instead he cites a purported

Eighth District case and claims that this court "held that when a trial court fails to reconstruct a destroyed plea record . . . reversal is required." He also cites a case in which the Third District allegedly "reversed where the trial court failed to reconstruct a lost transcript." (Appellant's brief at p. 9.) We are unable to locate either of the cases appellant cites for these propositions. Once again they appear to be hallucinations or fabrications.[5]

{¶ 60} Finally, appellant's argument regarding the trial court's compliance with App.R. 9(E) is mooted by this court's journal entry of December 8, 2025. In a motion filed in this court on December 2, 2025, appellant contended that the trial court had not ruled on his pending App.R. 9(E) motion filed November 21, 2025. He therefore asked this court to clarify the record to reflect that the complaining witness in his domestic-violence case had twice failed to appear despite being subpoenaed.

{¶ 61} This court denied appellant's App.R. 9(E) motion. It stated not only that "the record sufficiently establishes that the victim failed to appear twice" but also that "the motion that appellant filed in the trial court to vacate his guilty plea does not rely on the fact that the victim failed to appear as grounds for vacating the plea." Accordingly, citing *Lycan v. Cleveland*, 2019-Ohio-3510, ¶ 32-33 (8th Dist.),

---

[5] Appellant's citation to the purported Eighth District case of *State v. Banks* corresponds to *Toledo v. Heron Arizona Fund 1, LLC*, 2024-Ohio-1510 (6th Dist.), a Sixth District zoning case. We are unable to locate an Ohio case captioned "*State v. Banks*" that touches on the issue of reconstructing a destroyed plea record. Similarly, appellant's citation to *State v. Stuart*, which he contends is a Third District case, points instead to *State v. Hunter*, 2021-Ohio-2020 (9th Dist.). While *Hunter* is a criminal case, that Ninth District opinion did not involve a plea of guilty or no contest, much less a lost transcript.

this court stated that appellant had waived that argument and rejected appellant's attempt to raise new issues or arguments for the first time on appeal. *See also State v. Mosby*, 2024-Ohio-5210, ¶ 58 (8th Dist.) ("[A] party cannot raise new arguments and legal issues for the first time on appeal, and the failure to raise an issue or legal argument before the trial court waives that issue or legal argument for appellate purposes."); *State v. Almazan*, 2021-Ohio-1718, ¶ 8 (8th Dist.).

{¶ 62} Appellant's fourth assignment of error is overruled.

{¶ 63} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Shaker Heights Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

DEENA R. CALABRESE, JUDGE

MARY J. BOYLE, P.J., and
MICHAEL JOHN RYAN, J., CONCUR